I counsel for appellant please proceed Ms. Silva. Good morning, Your Honors. May it please the court Regina Silva representing the appellant defendant Elkhorn Packing in this matter. I further note to reserve three minutes for rebuttal argument. Thank you to the court for hearing this matter today. We appreciate the court's time and attention. The first thing I would like to state is this matter should be treated no differently than any other case concerning the enforcement of arbitration agreements in the workplace, except it is being treated differently. There's no authority which imposes on employers a higher burden to overcome when an H-2A employee signs an arbitration agreement. Nor is there any authority which states that H-2A employees cannot be subject to an arbitration agreement, just as with every other worker in the United States. In this matter, we have an arbitration agreement, which has already been decided by the court was a prima facie valid and enforceable arbitration agreement entered between the plaintiff appellee and our client defendant appellant Elkhorn Packing. The burden therefore shifted to the plaintiff to prove any defenses. Additionally, any doubts concerning the scope of honorable issues are supposed to be resolved in favor of arbitration, regardless of what the issue is. In this matter, the plaintiff argued he was excused from the arbitration agreement he signed due to economic duress and undue influence. As preliminarily I note that the standard review is de novo on all questions of law concerning this issue, and factual findings of the district court. This is review for clear error. I first take the defense that the plaintiff brought forward, which was the economic duress. And this economic duress defense has been applied when one party has done a wrongful act, which is sufficiently coercive to cause a reasonable, prudent person faced with no reasonable alternative, but to agree to unfavorable contract. And this is pursuing you argue that it's up to the judge to make this decision, or when it goes to arbitration, the arbitrators should make the decision on economic duress. Well, no, I on on this matter, I mean, it was the plaintiff who brought the defense to economic duress, it was okay for the court to give an opinion as to that, since that was defense that was raised to the to our motion to compel arbitration in this matter. But this economic duress, duress defense is considered by the courts as a last resort defense. And in this matter, the court found that it was wrongful here, because on several grounds, he said it was the arbitration agreement was not given to the plaintiff when he was in Mexico. So before he came to California, that the plaintiff indicated that he thought his visa they had would only allow him to work for Alcorn that he couldn't work for somebody else, that he was living that the plaintiff was living in housing controlled by Alcorn and that the plaintiff had already started working on that on that question of that he thought his visa is only good for Alcorn. The district court thought that he had a reasonable belief about that. But how do we square that with the standard, which is what's a reasonable person would decide? So was it reasonable for Mr. Martinez to believe that he could only work for Alcorn? Are we beholden to the district court's ruling on that? No, I don't think it was reasonable for for Mr. Martinez insults to believe that he could only work for Alcorn that his visa only extended to that. I mean, I think that a reasonable person like says, I mean, he didn't, apparently didn't ask any questions about what his visa meant. I mean, most people come from another country know your visa, they have a visa to come to the United States and work that they can work, you know, at another location. So I don't think it was reasonable for him to think that and I don't think that it is sufficient that the plaintiff's counsel just argue, well, this is a low educated person. So therefore, we should put ourselves in those shoes of a low educated person who maybe may not have that belief. And I don't I would disagree with that because I said is, you know, if you ask most people come from another country to work here, I mean, they, you know, they will apply to different places, they want to work wherever they can get a job at it's not about Oh, I have to only work for this one company who's assisted me to come into this country to work here. So are you saying that district court's finding that it was reasonable for Mr. Martinez to believe that was clearly erroneous? Or do we do we accept that ruling and just say that doesn't matter under the standard for economic duress? Two things, I think both, I think that it was erroneous for the court to find that it was reasonable for for the plaintiff to believe that. And I also think that understanding economic duress, I think that to use that to find this, I think was, was a was an error as well. Because under this, under this economic duress defense, I mean, you have to show a pretty extreme situation in order to meet that. And that economic duress is generally applied in other matters where there's clearly an wrongful act, like you have the, the, the initial wrongful act that's committed by the party. In the case, like we cited to case rich in Whitlock versus Ashton development, which is 157, Cal up for 1154. That was a that wrongful act was committed by a general contractor who threatened to not pay any of a debt. So he owed a debt 75,000 debt to a subcontractor. And he agreed to sign a settlement agreement stating that they would get 50,000 back. And that was clearly a wrongful act here. It's the company didn't engage often package did not engage in conduct, which you could say is wrongful. I mean, they had employed me they're being they're being punished because they had employees fill out their new hire paperwork in California after they arrived here, but there wouldn't have been a reason for them to have employees fill out new hire paperwork in Mexico, because you don't even know if the employee is going to actually make it to California to to work in California. So there'd be no reason to have them go through this paperwork process. When is it I think I read somewhere in the appellees brief that that Elkhorn actually changes practice and does actually now have orientations in Mexico. Is that correct? Yes, the Elkhorn did start doing that. And I would submit I think we put in as far as our appellate in our reply brief that that doesn't mean that we should be held because the company changes practices. I mean, the company is facing a lawsuit and is fighting this arbitrary, you know, and is dealing with this arbitration agreement. So if it changes the practice, because it's trying to avoid issues that are getting raised, I mean, I don't think that makes it that deems it as an admission that it knew it was doing something wrong. And I would submit to the contract because generally employers do, you know, change practices, even though they don't think they did anything wrong. But when you get sued, you know, you're going to do things to try to make it like less of an argument that someone can argue after the fact. So I don't think that makes it wrongful. And I'm kind of running out of time. So I'm just going to submit on the undo. And I'm actually sorry, quick, a quick question on jurisdiction, you, your company, remove this, but the privacy tort claim, how is that? And I think the district court asserted supplemental jurisdiction over that. But how is that a common nucleus of a fact with the claims about minimum wage? How did the district court have jurisdiction over the privacy tort claim? Your Honor, and that's a good question. And like I said, I don't know off the top of my head, because it's been a while since this got removed. I believe the court viewed it as part of part and parcel of the alleged wrongful conduct since this is this, this is an employee, right employer dispute. So I think it got brought in that way. And that's why it was considered all in one. But there's no federal claim about housing, correct? That it was just about minimum wage. Yes, minimum wage, I think he has, as far as housing sufficiency, he alleged one claim under that, I believe. But his for the most part, the claims were were state claims. And but like I said, he had a combination of claims in his initial complaint, I believe he amended it again, his complaint and like I said, I don't have the exact copy each cause of currently alleging in the amended complaint. But, you know, getting actually, I'm almost out of time. So I don't know if you want to ask any other questions, or I want to save some for rebuttal. Go ahead. All right. Thank you, counsel. Thank you. We'll hear from the plaintiff. Thank you, Your Honor. Good morning, and may it please the court Carla Gilbride from public justice on behalf of the district court heard from six witnesses over 11 hours and made 42 findings of fact in this case, regarding the conditions under which plaintiffs signed the arbitration agreement in 2016. And in 2017. Those conditions establish both economic duress and undue influence as a matter of California law. And either of those contract defenses is an economic duress, the district court found that arbitration was never mentioned when plaintiff was discussing the job prospects and and filling out paperwork to obtain his visa in Mexico. And that's fact finding number 10. The district court also found in fact, finding number 13, that the workers understood that they could only work on that h2o visa for Elkhorn packing. And their understanding of that fact was was based on to address Judge Bumate's question, the fact that all of their conversations about obtaining an h2o visa were mediated through representatives of Elkhorn packing, and the work order from the Department of Labor that was submitted with their visa application specifically discussed the work for Elkhorn and for the other defendant in this case, Dorigo brothers of California. The economic duress does that make it reasonable to believe that? That's the problem I have with it. I mean, it's your Honor, defendant never offered any contradictory testimony for many of their witnesses. In fact, Christine Bermudez, when he testified at the trial gave testimony consistent with the fact that the workers could only work for Elkhorn packing while on that h2o visa and as he was the employee directly responsible for recruiting workers, and he was the person who had conversations about the recruitment process with the workers. They derive their understanding of that process and of the exclusivity of the work from Mr. Bermudez himself. Other findings of fact that supported the economic duress conclusion the district court made is that by the time these workers were given the documents to sign, they were already in housing that was controlled by Elkhorn packing where their supervisors lived in the hotel with them. They were dependent on Elkhorn for many of their meals and for transportation into town in order to buy items that they needed or to send money home to their families, which Elkhorn supervisors knew that the workers did because they stopped the bus on the way home on payday specifically for that purpose. That's fine. Number not be economic duress or undue influence if, if the company had brought them up to California and then had them sign the papers before they got their assignments or did any work. Would that been okay? Well, there certainly would have been less fine, there would have been less of a basis to find economic duress. If Elkhorn had done that, there are a number of ways that Elkhorn could have presented these documents for signing that would have been less coercive than what they did. That certainly would have been one to do it earlier when they were still in Mexico before spending over a week's worth of pay to obtain the visa and before beginning their work for Elkhorn. The other thing that made the timing here particularly problematic is that the papers were presented before the workers were ever paid for their work, which does make this case similar to Rich and Willock where the work was already performed, but had not yet been paid for. And there's no factual finding that the workers thought they wouldn't get paid if they signed the contract, right? That's not correct, Your Honor, though, the workers believe and testify that that their understanding was that these documents, all six of them that they were given to sign, including the arbitration agreement, were necessary in order for them to work in the United States. And that's different than getting paid for the work that they already did, which is what I think you're you're suggesting. At finding of fact, number 38, the district court stated that there were numerous reasons for plaintiff to believe that signing the documents was mandatory, and those reasons included the fact that he was lined up with many other workers told to hurry and sign the documents, that the documents were presented all in stack, and there was no differentiation made between some that were optional as defendants continually maintain and some that were mandatory. To the contrary, all of the documents were treated as mandatory in the sense that the workers were lined up. And when they got to the front of the line, the representative of Elkhorn who was seated at the table simply flipped through the pages and said, sign here, sign here, sign here. Counsel, can I ask a question? If we were to agree with the district court here, would this form a rule that any company that brings agricultural workers into California to sign their arbitration agreements that that is, you know, wrongful conduct, that they have to sign it, they have to present the arbitration agreements before they leave from Mexico? Certainly not, Your Honor. There is no rule of law that was established by the district court's findings of fact in this case, the district court simply found that as a totality, the circumstances under which plaintiffs signed this agreement met the test under California law for both economic duress and undue influence. Our task is to determine whether or not the district court clearly erred in those findings. Yes, Your Honor. And those findings were well supported by the evidence and under the Anderson versus city of Bessemer standard, when findings of fact made by a judge sitting without a jury, the totality of the circumstances or the totality of evidence as found by the district court is plausible as something to which this court in review must defer. Even if looking at the evidence of fresh, this court would have reached a different conclusion. And with respect, that seems to be what my colleague is asking this court to do is to review DeNovo on the record or on the sort of pieces of the record that they present in their appellant's brief to reach a new conclusion just on the papers. But the district court had the benefit of live testimony. So the court is to find the district court's finding of a wrongful act or wrongful conduct under economic duress. Is that a question of law or fact or a mixed question? It's a mixed question, Your Honor. But there was a review that DeNovo. Yes, this court can review the conclusion that the district court came to on whether or not presenting these documents in a packet without giving the workers an opportunity to review them, those were all findings of fact. This court would then have to determine whether those findings of fact meet the meet the standard for a wrongful act as established under California law. And our position is that under analogous case law, the amount of economic vulnerability that the plaintiff had in this case is similar to the plaintiff in Dovey, Morrison and Forster, where the plaintiff there was eight months pregnant. She was faced with the loss of income and the potential loss of her home here. Similarly, plaintiff was the breadwinner for several family members in Mexico, including his mother, his mother-in-law and his wife. That's finding, in fact, number eight. And he had already spent over a week's worth of wages to obtain his visa and had made four trips from one town in Mexico to another to try to obtain an application for this work for Elkhorn. So in addition to the background economic vulnerability he already experienced, he was in particular economic duress at the time that these documents were presented for signature while he had already completed work for the defendants, but before he had ever been paid for that work. And again, turning to whether or not his belief that he wouldn't be paid was reasonable. Plaintiff had been told on numerous occasions, starting with his very first day of work, and this is finding the fact 17, that if you don't want to work hard, if you don't follow the rules, we can send you right back to Mexico. That refrain was repeated, as the district court found, on multiple occasions by multiple supervisors. And so it was a background fact in which plaintiff was aware when he was lined up with 150 of his colleagues told to hurry up and sign. And when the papers were not even in his physical control at any point during the signing process. This is can I ask, do you have any opinion on whether or not the district court had jurisdiction over that privacy tort claim and whether or not supplemental jurisdiction was proper? Our position that is the supplemental jurisdiction is proper. There is a breach of contract claim that does include housing related issues, and that is that breach of contract claim is also directly related to the wage and hour claims over which the district court had federal question jurisdiction. There's also diversity jurisdiction here based on the diversity of citizenship. Was there any objection raised to the exercise of supplemental jurisdiction over those claims? There was not, Your Honor. All right. Thank you. All right. Rebuttal. I'm sorry. Did you have another question, Your Honor? No, I was your time. Is your time up? I think your time had expired. Counsel, did you have anything you wanted to end with? I would just say that under the curation of the claim, fairly erroneous standard of review, this court should defer to the fact findings and credibility determinations that led the district court to conclude that plaintiff's consent was not freely given here. The court correctly found there was no contract as a matter of California law. Thank you. All right. Thank you, counsel. Rebuttal. Thank you, Your Honor. First of all, I want to state that the council spent a lot of time talking about these conditions the plaintiff was under, but this is all a red herring. Here talking about things that he was being told after the fact and after he already started working, this orientation that we've been talking about took place right there at the beginning of his employment, right after he got to California. So this thing about workers being told you have to do your job and all that, I mean, that has that are that are that are that refers to statements that were made after he was ready here or after he was already had signed off on these new higher documents, which is where this arbitration agreement was with counsel. Wasn't that all part of the factual predicate that was presented to the district court? Yes, it was part of the predicate. But what I'm saying is that the court unreasonably and an error relied upon that to make his ultimate finding and to find this undue influence and economic duress had happened here. I mean, in effect, what counsel is trying to do, because if you listen to our argument, just trying to set a new precedent here for employees who come and work in the United States who are from Mexico, because the economic duress that she talked about is no different than other people, other workers who are in the United States who sign off on arbitration agreement. This is the same argument that you get that is made by employees here in the United States who say, hey, I was forced to sign this and I had to sign it because I had no other choice. I needed to get this job and I needed the work. So it's no different. And all they're trying to do is basically set forth a precedent to be applied for future cases when you have H-2A workers who are here from Mexico. Counsel, that wasn't the only factual circumstance that was considered by the court. If these workers had just come from Mexico and nothing else had happened, I don't think the district court would have come to the same conclusion. So that was not the only reason the district court found a coercion, economic coercion, was it? Well, no, I mean, it wasn't the only reason, but he disregarded in error all of the testimony by the defense witnesses. I mean, for example, like he found he if you look at the beginning of his findings, he says, oh, there's credibility issues because one, they were the defense witnesses testified that there was different time. There was different times in which this orientation took place. You have one witness who said it might have been three hours or four hours, but he didn't put any context into that. I mean, we had defense witnesses who are present for hundreds of orientations over a period of years. They had no specific recollection as to these two orientation meetings that were attended by the plaintiff. All they could do was provide their best guesstimate as to the orientations that they had been attending for years. During like says, you know, going back for counsel, that was the job of the district court to weigh the credibility of the witnesses. There is no way we can reweigh that when we don't have the witnesses before us. Correct. But you can look at the testimony on its face and say this was error for him to make this decision to essentially reject all of the defense witness testimony because he essentially put it into this little narrow category window and said it's inconsistent because of this. They also found a credibility to make your credibility issues work. He didn't like the fact that they testified to different time periods of this orientation, which, again, in context, it was there was like it made sense why they all gave a testimony. They gave because we're talking about hundreds of orientation sessions that were attended by these witnesses over years of time. So they you know, all they could do is provide their best guesstimate as to the time in which the orientation took place. And then I counsel you've exceeded your time. Do you want to wrap up, please? I was only just going to point out that the you know, this economic duress again was a you know, that they're arguing is no different than any other people here in the United States. And it seems to me based upon this record that the court it was an error and it was mistake to find economic duress and undue influence. And for him to the court to find, I think, was this is contrary. And if you look at the evidence that was before him, this was to find these two extreme circumstances was incorrect. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next three cases.
judges: Siler, Rawlinson, Bumatay